**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ORACLE AMERICA, INC.,
*Plaintiff-Appellee*,

v.

MYRIAD GROUP A.G.,
*Defendant-Appellant*.

No. 11-17186

D.C. No.
4:10-cv-05604-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
May 6, 2013—San Francisco, California

Filed July 26, 2013

Before: William A. Fletcher, Ronald M. Gould,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

## SUMMARY[*]

### Arbitration

The panel reversed the district court's partial denial of a motion to compel arbitration in a copyright and trademark infringement action concerning licenses for access to the Java computer programming language.

The panel held that, unlike the arbitrability of claims in general, the question whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. Agreeing with the Second and D.C. Circuits, the panel held that incorporation of the United Nations Commission on International Trade Law arbitration rules into an arbitration provision in a commercial contract constitutes clear and unmistakable evidence that the parties to the contract intended to delegate questions of arbitrability to the arbitrator. The panel remanded the case for proceedings consistent with its opinion.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Jeffrey S. Bucholtz (argued), Kevin R. Sullivan, Shannon M. Kasley, Daniel S. Epps, and Timothy J. Sullivan, King & Spalding LLP, Washington, D.C.; Brian A. White, King & Spalding LLP, Atlanta, Georgia; Geoffrey M. Ezgar, King & Spalding LLP, San Francisco, California, for Defendant-Appellant.

Jeffrey M. Shohet (argued), Christopher J. Beal, and Amanda C. Fitzsimmons, DLA Piper LLP, San Diego, California; Elizabeth Rogers Brannen, Oracle America, Inc., Redwood City, California, for Plaintiff-Appellee.

**OPINION**

CHRISTEN, Circuit Judge:

Myriad Group A.G. appeals the district court's partial denial of its motion to compel arbitration. Myriad maintains that incorporation of the United Nations Commission on International Trade Law (UNCITRAL) arbitration rules into an arbitration provision in a commercial contract constitutes clear and unmistakable evidence that the parties to the contract intended to delegate questions of arbitrability to the arbitrator. We agree, consistent with the other circuits to have considered the question. We therefore reverse the district court's partial denial of Myriad's motion to compel arbitration.

## I.  BACKGROUND

Myriad is a Swiss mobile software company.  Oracle America, Inc. is a Delaware corporation that developed Java, a computer programming language, and the Java Runtime Environment.  The Java Runtime Environment facilitates cross-platform computing compatibility.

Oracle has a community licensing program that allows access to the Java programming language and use of Java trademarks in exchange for royalties.  Myriad entered into a Community Source License in 2002.  The Source License encompasses several separate licenses, including the Technology Compatibility Kits (TCK) License.  The TCK License allows a licensee to access Oracle's testing protocols; it is intended to ensure compatibility of the licensee's products.  A licensee's right to use Java trademarks is contingent upon the licensee's product meeting applicable testing protocols.

Myriad maintains that a separate agreement, the Java Specification Participation Agreement (JSPA), gave it rights to the Java language and the testing protocols without payment of royalties.  Oracle maintains that, based on Myriad's faulty interpretation of the JSPA, Myriad stopped paying royalties and breached the Source License.  Oracle also alleges that Myriad failed to renew a separate agreement, the Master Support Agreement, which was a prerequisite to a valid TCK License, and that Myriad's continued use of the Java trademarks and the Java programming language infringed upon Oracle's intellectual property rights.

Oracle filed suit in the Northern District of California asserting claims for breach of contract, violation of the

Lanham Act (15 U.S.C. § 1125(a)), copyright infringement (17 U.S.C. § 101 *et seq.*), and unfair competition under California law (Cal. Bus. & Prof. Code § 17200 *et seq.*). Myriad sued Oracle separately in the District of Delaware asserting that Oracle breached the JSPA.

Myriad moved in the Northern District of California to compel arbitration based on an arbitration clause in the Source License. The arbitration clause provides:

> Any dispute arising out of or relating to this License shall be finally settled by arbitration as set out herein, except that either party may bring any action, in a court of competent jurisdiction (which jurisdiction shall be exclusive), with respect to any dispute relating to such party's Intellectual Property Rights or with respect to Your compliance with the TCK license. Arbitration shall be administered: (i) by the American Arbitration Association (AAA), (ii) in accordance with the rules of the United Nations Commission on International Trade Law (UNCITRAL) (the "Rules") in effect at the time of arbitration as modified herein; and (iii) the arbitrator will apply the substantive laws of California and United States. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction to enforce such award.

Myriad submitted a demand for arbitration with the arbitrator on August 15, 2011. Approximately two weeks later, the district court granted Myriad's motion to compel

arbitration with respect to Oracle's breach of contract claim but denied Myriad's motion with respect to all other claims. The district court concluded that incorporation of the UNCITRAL arbitration rules did not constitute clear and unmistakable evidence that the parties intended to delegate questions of arbitrability to the arbitrator. The district court reasoned that the relevant provision of the 2010 UNCITRAL rules states only that the arbitrator has authority, but not exclusive authority, to decide its own jurisdiction.

In January 2012, the district court enjoined Myriad from proceeding with arbitration of its non-contract claims. In deciding Oracle's motion for preliminary injunction, the district court clarified that it had not ruled that it had concurrent jurisdiction with the arbitrator over questions of arbitrability. Rather, because the arbitration clause states that the court's jurisdiction is "exclusive" with respect to a party's intellectual property claims or claims arising out of the TCK License, the court determined that the parties intended for the court to decide questions of arbitrability.

Myriad appeals the district court's order partially denying its motion to compel arbitration. The parties stipulated to a stay of the district court proceedings pending the outcome of this appeal.

## II.  STANDARD OF REVIEW

We review an order denying a motion to compel arbitration de novo. *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1120 (9th Cir. 2011).

## III.  DISCUSSION

The only issue in this case is whether the parties agreed to arbitrate arbitrability.  There is generally a "liberal federal policy favoring arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  In accordance with that policy, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25.  But the dispute in this case centers on *who* decides whether a claim is arbitrable.

"Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citations omitted).  But, unlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is "'an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise*.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (emphasis added) (alteration omitted) (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)).  In other words, there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability.

## A. Whether Incorporation of the UNCITRAL Arbitration Rules Clearly and Unmistakably Delegates Arbitrability to the Arbitrator

As a preliminary matter, the parties disagree about which version of the UNCITRAL arbitration rules controls.  Their

agreement refers to the UNCITRAL rules "in effect at the time of arbitration as modified herein." The 2010 UNCITRAL rules were in effect at the time Myriad submitted its demand for arbitration, and some of Oracle's arguments hinge on application of the 2010 rules. But Myriad represents that the parties at one point agreed that the 1976 UNCITRAL rules govern. We conclude that it is ultimately unnecessary to decide which version of the UNCITRAL rules applies.

The 1976 UNCITRAL arbitration rules provide that "[t]he arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause or of the separate arbitration agreement." UNCITRAL Arbitration Rules art. 21, para. 1, G.A. Res. 31/98, U.N. Doc. A/RES/31/98 (Dec. 15, 1976). The 2010 UNCITRAL rules state that "[t]he arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence or validity of the arbitration agreement." UNCITRAL Arbitration Rules art. 23, para. 1, G.A. Res. 65/22, U.N. Doc. A/RES/65/22 (Jan. 10, 2011).

By giving the arbitral tribunal the authority to decide its own jurisdiction, both the 1976 and 2010 UNCITRAL rules vest the arbitrator with the apparent authority to decide questions of arbitrability. The only difference is that, under the 1976 rules, the authority of the arbitral tribunal is described as ruling on objections to its jurisdiction and under the 2010 rules the tribunal has the authority to decide its jurisdiction. The 1976 rules are more narrowly phrased than the 2010 rules, but there is not a significant distinction between how these sets of rules treat questions of arbitrability. We conclude it is immaterial which version of

the UNCITRAL rules is applied to the question presented by this appeal.

The parties' central dispute is whether incorporation of the UNCITRAL rules into the parties' arbitration provision constitutes clear and unmistakable evidence that the parties intended to arbitrate arbitrability.  This is an issue of first impression in the Ninth Circuit, but the Second Circuit and the D.C. Circuit have concluded that incorporation of the 1976 UNCITRAL arbitration rules constitutes clear and unmistakable evidence that the parties to an agreement intended to arbitrate questions of arbitrability.

### 1. Second Circuit

In *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011), the Second Circuit held that whether Chevron had waived its right to arbitration under an investment treaty or was estopped from invoking arbitration under that treaty were issues for the arbitral panel.  The treaty—to which Ecuador was a signatory—incorporated the 1976 UNCITRAL arbitration rules.

The court noted initially that waiver was presumptively an issue for the arbitrator.  *Id.* at 394.  But the court then ruled that, even if waiver and estoppel could be characterized as questions of arbitrability (and therefore, presumptively as issues for judicial determination), incorporation of the UNCITRAL rules was "clear and unmistakable" evidence that the parties delegated questions of arbitrability to the arbitrator.  *Id.*  Because Ecuador's waiver and estoppel claims challenged the validity of the arbitration agreement, and because the UNCITRAL rules gave the arbitrator authority to decide objections to the validity of the arbitration agreement,

the Second Circuit concluded that the waiver and estoppel claims were for the arbitrator to decide.  *Id.* at 394–95.

Oracle argues that *Republic of Ecuador* only addressed whether the arbitrator should decide waiver and estoppel issues in the first instance.  But the Second Circuit has more recently confirmed that "*Republic of Ecuador . . .* held that a bilateral investment treaty's incorporation of the . . . UNCITRAL rules was clear and unmistakable evidence that the parties intended questions of arbitrability to be decided by the arbitral panel in the first instance." *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 73 (2d Cir. 2012) (internal quotation marks omitted).

## 2.  D.C. Circuit

In *Republic of Argentina v. BG Group PLC*, 665 F.3d 1363, 1371 (D.C. Cir. 2012), the D.C. Circuit also concluded that incorporation of the 1976 UNCITRAL Rules provides clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  Like *Republic of Ecuador*, the decision in *Republic of Argentina* involved a bilateral investment treaty.  *Id.* at 1365.  The treaty called for arbitration so long as a party first filed suit in the host country's courts and eighteen months passed without resolution.  *Id.*  If those preconditions were met and the parties did not separately agree on an arbitration forum or procedure, the treaty dictated that the UNCITRAL arbitration rules would govern.  *Id.* at 1370–71.

The plaintiff in *Republic of Argentina* invoked the treaty's arbitration provision without first filing suit in an Argentine court.  *Id.* at 1365.  The D.C. Circuit ultimately held that because the preconditions to arbitration had not been met,

"the question of arbitrability [was] an independent question of law for the court to decide." *Id.* at 1371. But the court also observed that if the plaintiff had first filed suit in an Argentine court and waited eighteen months, the result would have been different: "the Treaty's incorporation of the UNCITRAL Rules provides clear and unmistakable evidence that the parties intended for the arbitrator to decide questions of arbitrability." *Id.* (internal quotation marks, alterations, and citations omitted). The D.C. Circuit concluded succinctly that "the UNCITRAL Rules grant the arbitrator the power to determine issues of arbitrability." *Id.*

### 3. Incorporation of the American Arbitration Association Rules

Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005). Only one circuit has concluded otherwise. *See Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 777 & n.1, 780 (10th Cir. 1998). The AAA rules contain a jurisdictional provision similar to Article 21(1) of the 1976 UNCITRAL rules and almost identical to Article 23(1) of the 2010 UNCITRAL

rules.[1]   The Second and D.C. Circuits' conclusions with respect to incorporation of the UNCITRAL rules are consistent with the majority view regarding the effect of incorporating the AAA rules into an agreement.

We see no reason to deviate from the prevailing view that incorporation of the UNCITRAL arbitration rules is clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability.   We hold that as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of the UNCITRAL rules delegates questions of arbitrability to the arbitrator.[2]

## B.  Whether the Parties Intended a Court Would Decide Arbitrability or Whether the Parties' Intent is Ambiguous

Oracle advances several arguments in support of its position that the parties to this case intended for a court to decide arbitrability or that the parties' intent is at least ambiguous.  We address each in turn.

---

[1] Commercial Arbitration Rule 7(a) provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  AAA Commercial Arbitration Rule 7(a).

[2] We express no view as to the effect of incorporating arbitration rules into consumer contracts.

### 1.  Article 23(3) of the 2010 UNCITRAL rules does not create an ambiguity.

Oracle argues that Article 23(3) of the 2010 UNCITRAL rules renders the effect of the 2010 rules ambiguous.  Article 23(3) states, "[t]he arbitral tribunal may continue the arbitral proceedings and make an award, notwithstanding any pending challenge to its jurisdiction before a court." UNCITRAL Arbitration Rules art. 23, para. 3, G.A. Res. 65/22, U.N. Doc. A/RES/65/22 (Jan. 10, 2011).  From this, Oracle argues that courts and arbitrators have concurrent authority to decide the arbitrator's jurisdiction.  But even if the 2010 UNCITRAL rules apply, they do not, of themselves, create a path to challenging the arbitrator's jurisdiction in federal court.  Article 23(3) assumes such a path.  *See* U.N. Comm'n on Int'l Trade Law, Report of the Working Group on Arbitration and Conciliation on the Work of its Forty-Fifth Session ¶¶ 99–101 (Vienna, Sept. 11–15, 2006) ("It was noted that a number of national laws provided parties with an irrevocable right to seek recourse from the courts.").  By contrast, "the central . . . purpose of the [Federal Arbitration Act] is to ensure that private agreements to arbitrate are enforced according to their terms."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (internal quotation marks omitted).  The UNCITRAL rules clearly and unmistakably delegate questions of arbitrability to an arbitrator—it is immaterial to the outcome of this dispute that the 2010 UNCITRAL rules also contemplate that in some countries the arbitrator's jurisdiction may be simultaneously challenged in court.

## 2. The carve-out clause in the parties' agreement does not negate incorporation of the UNCITRAL rules.

Oracle also argues that a carve-out provision in the parties' arbitration clause expresses their intent that a court would decide arbitrability.  The arbitration clause states that any claim arising out of the Source License shall be settled by arbitration.  But the carve-out clause states "that either party may bring any action, in a court of competent jurisdiction (which jurisdiction shall be exclusive), with respect to any dispute relating to such party's Intellectual Property Rights or with respect to [Myriad's] compliance with the TCK license."  Oracle maintains that whether a court or an arbitrator will determine the arbitrability of intellectual property claims or claims arising out of the TCK License are "disputes relating to" those claims, and therefore concludes that the district court had exclusive jurisdiction to decide the arbitrability of those claims.

Enforcement of Myriad's intellectual property rights is restricted by the Source License.  And the TCK License is part of the Source License.  Thus, by definition, the claims excepted from arbitration by the carve-out clause are claims "arising out of or relating to" the Source License.  Oracle's argument conflates the *scope* of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability.  The decision that a claim relates to intellectual property rights or compliance with the TCK License constitutes an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator by incorporating the UNCITRAL rules.

Oracle cites a Sixth Circuit case in support of its position. In *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 511 (6th Cir. 2011), the Sixth Circuit held that even though an arbitration clause incorporated the AAA rules, the arbitration clause was so narrow that questions of arbitrability did not need to be decided by the arbitrator.  The arbitration clause in *Turi* only contemplated arbitration of "claim[s] regarding fees" in excess of $5,000, *id.* at 506, but the plaintiffs in *Turi* also asserted claims for fraud, conspiracy, misrepresentation, intentional and negligent infliction of emotional distress, and RICO violations, *id.* at 500.  The court stated that "even where the parties expressly delegate to the arbitrator the authority to decide the arbitrability of the claims related to the parties' arbitration agreement, this delegation applies only to claims that are at least *arguably* covered by the agreement." *Id.* at 511.

*Turi* did not involve a carve-out clause.  It involved an extremely narrow arbitration provision interpreted in the context of a host of unrelated claims.  Here, the excepted claims are by definition related to arbitrable claims because they all relate to the Source License.  For this reason alone, *Turi* is distinguishable.  Nor are we persuaded by the reasoning of *Turi* because as discussed above, when a tribunal decides that a claim falls within the scope of a carve-out provision, it necessarily decides arbitrability.  *Turi*'s reasoning collapses two separate questions into one.

Oracle also relies on a case from the Delaware Supreme Court, *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76 (Del. 2006).  There, the parties' arbitration agreement stated, "[a]ny controversy or claim arising out of or relating to this Agreement . . . shall be settled by arbitration," but the agreement also allowed LLC members to pursue injunctive

relief and specific performance in court.  *Id.* at 79–80.  The
Delaware Supreme Court held that "[s]ince th[e] arbitration
clause [did] not generally refer all controversies to arbitration,
the federal majority rule does not apply, and something other
than the incorporation of the AAA rules would be needed to
establish that the parties intended to submit arbitrability
questions to an arbitrator."  *Id.* at 81.  In fact, the parties'
agreement in *James & Jackson* did generally refer all
controversies to arbitration, only excepting claims for
injunctive relief and specific performance.  *Id.* at 79–80.  It is
clear that the *James & Jackson* court relied on the arbitration
agreement's carve-out provision to decide that questions of
arbitrability would be decided by the court.

*James & Jackson* nominally supports Oracle's position,
but the decision's suggestion that the federal majority rule
only applies when an arbitration agreement lacks a carve-out
provision does not follow from the cases the court cited, *see
id.* at 80 n.9,[3] and we know of no other authority supporting
this proposition.

### 3. The Source License does not modify the UNCITRAL rules' jurisdictional provisions.

Finally, Oracle argues that the parties' arbitration clause
modified the UNCITRAL rules such that arbitrability must be
determined by the court.  The arbitration clause in the Source
License states that arbitration is to be administered "in
accordance with the [UNCITRAL] rules . . . in effect at the
time of arbitration *as modified herein*."  The paragraph after
the arbitration clause sets out specific rules regarding

---

[3] The court cited, among others, *Terminix Int'l*, 432 F.3d at 1329, and
*Contec Corp.*, 398 F.3d at 208.

arbitration proceedings that differ from the UNCITRAL rules, but none of the modifications concern questions of arbitrability.

Similarly, Oracle maintains that vesting courts with "exclusive" authority to adjudicate claims relating to the parties' intellectual property rights and claims relating to Myriad's compliance with the TCK License constitutes modification of the UNCITRAL rules. Oracle argues that this modification requires that a court determine arbitrability. We disagree. This argument merely recasts Oracle's contention that the carve-out provision evidences the parties' intention for a court to decide the arbitrability of claims that fall within it. It is foreclosed by the discussion above.

## IV. CONCLUSION

Incorporation of the UNCITRAL arbitration rules into the parties' commercial contract constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. Accordingly, we **REVERSE** the district court's partial denial of Myriad's motion to compel arbitration and **REMAND** for proceedings consistent with this opinion.