# United States Court of Appeals for the Federal Circuit

---

**ROHM SEMICONDUCTOR USA, LLC,**
*Plaintiff-Appellant*

**v.**

**MAXPOWER SEMICONDUCTOR, INC.,**
*Defendant-Appellee*

---

2021-1709

---

Appeal from the United States District Court for the Northern District of California in No. 3:20-cv-06686-VC, Judge Vince Chhabria.

---

Decided: November 12, 2021

---

AARON M. FRANKEL, Kramer Levin Naftalis & Frankel LLP, New York, NY, argued for plaintiff-appellant. Also represented by SHANNON H. HEDVAT, CRISTINA MARTINEZ; JAMES R. HANNAH, LISA KOBIALKA, Menlo Park, CA.

NANCY TOMPKINS, Roger Cook Law, San Francisco, CA, argued for defendant-appellee. Also represented by ROGER L. COOK.

---

Before LOURIE, O'MALLEY, and CHEN, *Circuit Judges*.

O'MALLEY, *Circuit Judge*.

ROHM Semiconductor USA, LLC ("ROHM USA") appeals from the U.S. District Court for the Northern District of California's decision compelling arbitration and dismissing ROHM USA's declaratory judgment action without prejudice. *ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*, No. 20-CV-06686-VC, 2021 WL 822932, at *1 (N.D. Cal. Feb. 4, 2021). Because we agree that an arbitrator must determine arbitrability of the dispute between ROHM USA and MaxPower Semiconductor, Inc. ("MaxPower"), we affirm.

## I.    BACKGROUND

In 2007, ROHM Japan and MaxPower entered into a technology license agreement ("TLA"). Under the TLA, ROHM Japan and its subsidiaries (collectively "ROHM") were permitted "to use certain power [metal oxide semiconductor field effect transistors ('MOSFET')]-related technologies of" MaxPower ("Licensor") developed under a Development and Stock Purchase Agreement in exchange for royalties paid to MaxPower. J.A. 619 (TLA 2011 Amendment ¶ A).

The TLA, as amended in 2011, includes an agreement to arbitrate "[a]ny dispute, controversy, or claim arising out of or in relation to this Agreement or at law, or the breach, termination, or validity thereof." J.A. 623–24 (TLA 2011 Amendment ¶ 10 § 13.6). The arbitration agreement provides that arbitration is to be conducted "in accordance with the provisions of the California Code of Civil Procedure" ("CCCP"). J.A. 623–24 (TLA 2011 Amendment ¶ 10).

In 2019, a dispute arose between ROHM Japan and MaxPower concerning whether the TLA covers ROHM's silicon carbide MOSFET products. In September 2020, MaxPower notified ROHM Japan of its intent to initiate arbitration. Shortly thereafter, on September 23, 2020, ROHM USA, a subsidiary of ROHM Japan, filed a

complaint for declaratory judgment of noninfringement of four MaxPower patents in the Northern District of California and four *inter partes* review petitions concerning those same patents. MaxPower filed a motion to compel arbitration in the district court case. The district court granted MaxPower's motion to compel arbitration and dismissed the case without prejudice, reasoning that the TLA "unmistakably delegate[s] the question of arbitrability to the arbitrator." *ROHM*, 2021 WL 822932, at *1.

ROHM USA appeals the district court's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II.    DISCUSSION

We apply the law of the regional circuit when reviewing a district court's dismissal of a case. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). Similarly, "[w]e are obligated to follow regional circuit law on questions of arbitrability that are not 'intimately involved in the substance of enforcement of a patent right,'" such as those presented here. *See Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1356 (Fed. Cir. 2004) (quoting *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001)). The Ninth Circuit is the relevant regional circuit in this case.

The Ninth Circuit reviews a district court's order compelling arbitration *de novo* and reviews underlying findings of fact for clear error. *Bradley v. Harris Rsch., Inc.*, 275 F.3d 884, 888 (9th Cir. 2001), *abrogated in part on other grounds by Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015). The district court decision on appeal here rested entirely on legal determinations concerning whether the parties agreed to arbitrate arbitrability. We, therefore, review the entirety of that decision *de novo*.

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern

the formation of contracts," with "an important qualification." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* (quoting *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Absent that clear and unmistakable delegation, the issue of arbitrability should be decided by a court. *AT&T Techs.*, 475 U.S. at 649.

ROHM USA argues that its TLA with MaxPower lacks clear and unmistakable evidence of an agreement to arbitrate arbitrability. None of its arguments are convincing.[1] Indeed, some border on the frivolous.

ROHM USA first submits that the CCCP is ambiguous because it contains two provisions: § 1297.161, which provides that an arbitrator "may rule on its own jurisdiction" in international commercial arbitration; and § 1281.2, which provides that "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists." ROHM USA claims that this ambiguity prevented the district court from choosing between the provisions and deferring to the arbitrator on the question of arbitrability. But CCCP § 1297.17 provides that Title 9.3, which contains § 1297.161, "*supersedes* Sections 1280 to 1284.2, inclusive, with respect to international commercial arbitration and conciliation." CCCP § 1297.17 (emphasis added). Thus, the CCCP cannot be ambiguous because only one of the provisions ROHM USA cites can be applicable to the dispute in this case—either CCCP § 1297.161 or § 1281.2, but

---

[1] We address all arguments properly presented by ROHM USA on appeal. ROHM USA has not argued on appeal that the TLA or its arbitration provision are unenforceable or should be revoked.

not both.  Which one of the two provisions governs turns on whether the dispute at issue is an international one.[2]

Not surprisingly, ROHM USA next argues that CCCP § 1297.17 and § 1297.161 do not apply because this dispute is not international in nature.  ROHM USA contends that the dispute before us is a purely domestic one.  It first insinuates that it is a non-party to the TLA and then describes this matter as one between two companies based in the United States, involving United States patents, and filed in a United States district court.  Oral Arg. at 4:00–5:00, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-1709_10052021.mp3.    Based on this contention, ROHM USA asserts that § 1297.161 is irrelevant and that the District Court erred in relying upon it.  ROHM USA is quite clearly wrong.

ROHM USA's contention that § 1297.161 is irrelevant to the dispute before us mistakes the record facts and

---

[2]    In support of its ambiguity argument, ROHM USA relies on, among other arguments, its claim that § 1297.161 is one in a sea of CCCP provisions relating to arbitration.  But, while the CCCP does contain many provisions related to arbitration, only the two provisions referenced above could even arguably be applicable to this dispute.  CCCP Titles 9, 9.1, 9.2, 9.3, 9.4, and 9.5 apply to various categories of arbitration.  Of these, Titles 9.1, 9.2, 9.4, and 9.5 clearly are inapplicable because they, respectively, are directed to arbitration of medical malpractice claims, public construction contracts, real estate contracts, and firefighter and law enforcement officer labor disputes.  That leaves only Titles 9 and 9.3 as potentially applicable provisions.  As we discuss in the next section herein, it is clear that the provisions directed to international commercial arbitration in Title 9.3 apply.  It is not difficult for sophisticated parties such as ROHM USA to understand how the CCCP is structured.

ignores the key text of the code. While ROHM USA may not be a signatory to the TLA, it clearly is covered by, and obligated under, it. The TLA provides that it applies to all subsidiaries of ROHM Japan. *See* J.A. 651 (TLA) ("THIS TECHNOLOGY LICENSE AGREEMENT . . . is entered into . . . by and between MaxPower Semiconductor, Inc., a California corporation . . . and Rohm Co., Ltd., a Japanese corporation . . ., and its *subsidiaries* . . . ." (emphasis added)); *see also* J.A. 619 (TLA 2011 Amendment) (providing an identical definition of the parties to the TLA in the context of the 2011 amendment). No matter how ROHM USA tries to pigeonhole this action into its "domestic action" moniker, moreover, this case is merely one aspect of a sprawling international dispute. MaxPower first raised its concerns about royalties allegedly owed under the TLA with ROHM Japan, ROHM USA's parent company. It was only after MaxPower told ROHM Japan of its intent to take the dispute to arbitration under the very TLA at issue before us that ROHM USA brought this declaratory judgment action seeking a declaration of noninfringement for the products on which MaxPower seeks royalties from ROHM Japan. And ROHM USA has also challenged MaxPower patents in Korea and China.

Under the broad terms of § 1297.13, which defines international arbitration for the purposes of whether Title 9.3 applies, this dispute has all the hallmarks of an international dispute. CCCP § 1297.13 provides that:

An arbitration or conciliation agreement is international if any of the following applies:

(a) The parties to an arbitration or conciliation agreement have, at the time of the conclusion of that agreement, their places of business in different states.

(b) One of the following places is situated outside the state in which the parties have their places of business:

(i) The place of arbitration or conciliation if determined in, or pursuant to, the arbitration or conciliation agreement.

(ii) Any place where a substantial part of the obligations of the commercial relationship is to be performed.

(iii) The place with which the subject matter of the dispute is most closely connected.

(c) The parties have expressly agreed that the subject matter of the arbitration or conciliation agreement relates to commercial interests in more than one state.

(d) The subject matter of the arbitration or conciliation agreement is otherwise related to commercial interests in more than one state.

It is undisputed that ROHM Japan and MaxPower have their places of business in different "states,"[3] Japan and the United States, respectively. Thus, the TLA is "international" under at least CCCP § 1297.13(a). It also appears that the TLA is international under CCCP § 1297.13(b)(ii), (c), and (d), as the TLA permits ROHM to make, sell, and market products using the licensed technology in a territory defined as "the entire world." J.A. 653 (TLA ¶¶ 1.12, 2). The TLA contains other similar "global" terms, such as its definition of "patents" as all of MaxPower's patents "in all countries of the world" relating to the developed technology. J.A. 658 (TLA ¶ 8.2). The CCCP dictates that disputes governed by international commercial arbitration agreements as defined by CCCP § 1297.13

---

[3]   CCCP § 1297.15 explains that, for the purpose of the above provision, "the states of the United States, including the District of Columbia, shall be considered one state."

shall be governed by the provisions of CCCP Title 9.3, including the jurisdictional provision of § 1297.161, and § 1297.17, which makes clear that other generally applicable arbitration provisions are superseded in such cases.

ROHM USA next argues that, even if it is clear that this is an international dispute and that § 1297.161 applies, that provision is not a clear and unmistakable delegation of authority to the arbitrator to decide the question of arbitrability because it is permissive. ROHM USA argues that, because § 1297.161 states that "[t]he arbitral tribunal *may* rule on its own jurisdiction," CCCP § 1297.161 (emphasis added), it merely allows the parties to agree to waive a court determination, which ROHM USA does not want to do. Again, we disagree. ROHM USA is correct that "may" is generally a permissive verb. *See, e.g.*, *Patterson v. Wagner*, 785 F.3d 1277, 1281 (9th Cir. 2015) ("The normal reading of 'may' is permissive, not mandatory."). But "may" here does not mean "may *also*," as ROHM USA urges. MaxPower's interpretation of the permissive "may" as "may, *if arbitrability is disputed*," makes much more sense in this context.

Indeed, ROHM USA's interpretation of "may" would render § 1297.161 meaningless. It would interpret § 1297.161 to mean that the arbitral tribunal *or* a court may determine arbitrability. But that is already true absent § 1297.161. Thus, ROHM USA's interpretation would render § 1297.161 a dead letter. MaxPower's interpretation of "may," on the other hand, makes sense in context. Use of the mandatory "shall" in this provision, rather than "may" would suggest that the arbitrator *must* decide arbitrability as a threshold matter, even where arbitrability is not disputed, or risk being overturned on appeal for the failure to do so. Use of the permissive "may" allows the arbitrator to address arbitrability only where necessary. This interpretation is confirmed by our sister circuits' interpretation of a similar phrase in the analogous United Nations Commission on International Trade Law

("UNCITRAL") rule, which states that "[t]he arbitral tribunal *shall have the power to* rule on its own jurisdiction." U.N. Comm'n on Int'l Trade L., UNCITRAL Arbitration Rules art. 23, para. 1, U.N. Doc. A/RES/65/22 (Jan. 10, 2011) (emphasis added). Multiple circuit courts have held that the UNCITRAL language vests the arbitrator with apparent authority to decide questions of arbitrability. *See, e.g., Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1073 (9th Cir. 2013); *Republic of Argentina v. BG Grp. PLC,* 665 F.3d 1363, 1371 (D.C. Cir. 2012); *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 73–74 (2d Cir. 2012). As the district court found, there is no difference between "may" and "shall have the power to" in this context. J.A. 884–86.

Indeed, the Ninth Circuit concluded in *Oracle* that "shall have the power to" in the UNCITRAL rules "vest[s] the arbitrator with the apparent authority to decide questions of arbitrability. *Oracle*, 724 F.3d at 1073. In *Oracle*, the Ninth Circuit found that a contract that stated that arbitration would be administered "in accordance with the rules of the United Nations Commission on International Trade Law (UNCITRAL) (the 'Rules') in effect at the time of arbitration" was "clear and unmistakable evidence that the parties to the contract intended to delegate questions of arbitrability to the arbitrator." *Id*. at 1071. In so finding, the Ninth Circuit explained its inquiry as: "whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise.*'" *Id.* at 1072 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (emphasis added) (alteration and citation omitted)). The dispute in *Oracle* was over whether incorporation of UNCITRAL rules constituted clear and unmistakable evidence of the parties' intent to delegate arbitrability. *Id*. at 1073. The Ninth Circuit looked to cases from other circuits and concluded that it had no reason to deviate from the prevailing view that incorporation of the UNCITRAL arbitration rules is clear and unmistakable evidence that the

parties agreed the arbitrator would decide arbitrability. *Id.* at 1074–75.

Virtually all courts to consider the question, including this court, have concluded that, in contracts between sophisticated parties, incorporation of rules with a provision on the subject is normally sufficient "clear and unmistakable" evidence of the parties' intent to delegate arbitrability to an arbitrator. *See, e.g.*, *id.* at 1075 (interpreting a contract incorporating the 2010 UNCITRAL rules); *Republic of Argentina,* 665 F.3d at 1371 (1976 UNCITRAL rules); *Schneider*, 688 F.3d at 73–74 (1976 UNCITRAL rules); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (AAA rules); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (AAA rules); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (applying Ninth Circuit law and interpreting a contract incorporating the AAA rules), *abrogated on other grounds by Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (AAA rules).

ROHM USA first argues that *Oracle* is distinguishable because the CCCP differs from the UNCITRAL rules. ROHM USA argues that because the CCCP is ambiguous about who determines arbitrability, it is unlike the much clearer statement in UNCITRAL. We have already explained above why we do not agree that the CCCP is ambiguous in this context and why we see no daylight between the language in the relevant UNCITRAL rule and § 1297.161 of the CCCP.

ROHM USA further argues that the mere incorporation of rules, such as the UNCITRAL, AAA, or CCCP rules, is not a sufficiently clear and unmistakable delegation of authority to determine arbitrability under *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995). It argues that we should overrule *Oracle* (and apparently all other cases

listed above) on that ground. But *Oracle*—which was decided long after *First Options* and is binding on us in this appeal—expressly found to the contrary, relying on the very standard set out in *First Options* and reiterated in *Howsam*. The same is true with respect to the string of other cases upon which the district court relied and of our decision in *Qualcomm*.

For the first time in its reply brief to this court, ROHM USA argues that the Third Circuit has disagreed with this prevailing view, including with our own decision in *Qualcomm*. *See Qualcomm*, 466 F.3d at 1373. It claims that the Third Circuit has held that the incorporation of AAA rules is not a clear and unmistakable delegation of arbitrability. *See Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746 (3d Cir. 2016). ROHM USA did not raise this argument before the district court or in its opening brief on appeal, so it is forfeited twice over. But, even not forfeited, we reject ROHM USA's broad reading of *Chesapeake Appalachia*. There, the Third Circuit held that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," and it did not disagree with that view in principle. *Id.* at 763 (quoting *Oracle*, 724 F.3d at 1074). The court went on, however, to find an exception to this general rule in the circumstances of that case, i.e., a class action. *Id.* In doing so, the Third Circuit relied on the contracts' "total absence of any reference to classwide arbitration." *Id.* at 759 (quoting *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013)). It found that locating the AAA provision delegating class arbitrability to an arbitrator required "a daisy-chain of cross-references" from the contract to the AAA to one of the AAA's fifty-plus sets of rules, the Commercial Rules, which refer only to bilateral arbitration, and from there to later-enacted Supplementary Rules, which refer to class arbitration. *Id.* at 761.

Here, the dispute concerns bilateral, not class, arbitration. And finding the applicable CCCP provision does not require "a daisy-chain of cross-references." As noted, the CCCP incorporated by the TLA has only six titles relevant to arbitration. And, as explained above, Title 9.3, directed to international commercial arbitration, is the only one applicable to this dispute. The facts in *Chesapeake Appalachia* are clearly distinguishable.

The only case ROHM USA has located that has held to the contrary in the context of bilateral arbitration is a Florida state court decision, *Doe v. Natt*, 299 So. 3d 599 (Fla. Dist. Ct. App. 2020), *review granted sub nom. Airbnb, Inc. v. Doe*, No. SC20-1167, 2021 WL 798838 (Fla. Mar. 2, 2021). The state court criticized *Oracle* and other circuit court decisions we have identified, stating that: "none of these cases have ever examined how or why the mere 'incorporation' of an arbitration rule such as the one before us . . . satisfies the heightened standard the Supreme Court set in *First Options*, nor how it overcomes the 'strong pro-court presumption' that is supposed to attend this inquiry." *Id*. at 608.

We decline to adopt the view of a single Florida state court, which itself is currently under review by the Florida Supreme Court, and reaffirm our agreement with the prevailing view of our sister circuits. *See Qualcomm*, 466 F.3d at 1373. In contracts between sophisticated parties, it is fair to hold the parties to all provisions of their contract, including those incorporated by reference. To hold otherwise would deprive sophisticated parties of a powerful tool commonly used to simplify their contract negotiations—adoption of provisions established by neutral third parties. And to refuse to give effect to the plain language of the contract, both its incorporation of the CCCP and the CCCP's delegation of arbitrability to an arbitrator, would ignore a basic premise of contract law—that contracts are written legal instruments and their words are not to be ignored.

ROHM SEMICONDUCTOR USA, LLC v.                                   13
MAXPOWER SEMICONDUCTOR, INC.

### III.   CONCLUSION

For the foregoing reasons we affirm the district court's decision.

**AFFIRMED**