**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PORTLAND GENERAL ELECTRIC COMPANY,

*Plaintiff-Appellee*,

v.

LIBERTY MUTUAL INSURANCE COMPANY; ZURICH AMERICAN INSURANCE COMPANY,

*Defendants-Appellants.*

No. 16-35628

D.C. No. 3:16-cv-00495-HZ

ORDER AND AMENDED OPINION

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted May 8, 2017
Portland, Oregon

Filed July 10, 2017
Amended August 28, 2017

Before: Jay S. Bybee and Andrew D. Hurwitz, Circuit
Judges, and Jed S. Rakoff,[*] Senior District Judge.

---

[*] The Honorable Jed S. Rakoff, Senior United States District Judge
for the Southern District of New York, sitting by designation.

Order;
Opinion by Judge Rakoff

**SUMMARY**[**]

**Arbitration**

The panel vacated the district court's judgment entering a preliminary injunction prohibiting sureties from pursuing claims against Portland General Electric Company ("PGE") in arbitration and denying a mandatory stay of the judicial proceedings under § 3 of the Federal Arbitration Act, and remanded for further proceedings; and dismissed for lack of appellate jurisdiction the sureties' appeal from the order denying their motion for a discretionary stay.

The appeal involves the interplay of three related contracts: a Construction Contract entered by PGE and several contracting companies to build an Oregon power plant; a performance Bond in which appellants/sureties Liberty Mutual Insurance Company and Zurich American Insurance Company issued a bond to PGE as required by the Construction Contract; and a Guaranty of performance issued to PGE by its parent company, Abengoa S.A. The Guaranty provided that the parties submit any disputes to binding arbitration to be conducted by the International Chamber of Commerce ("ICC") under its procedural rules and Oregon substantive law.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

PGE filed this diversity action against the sureties, alleging breach of the Bond and bad faith; and PGE sought a preliminary injunction prohibiting the sureties from arbitrating their claims against PGE.

The panel held that the incorporation of the ICC Rules into an arbitration agreement constituted clear and unmistakable evidence of a delegation of gateway issues of arbitrability to the arbitrator.

The panel rejected PGE's contention that the ICC Rules did not govern the present dispute because the Bond lacked an arbitration clause. The panel held that the following were questions of the scope of the arbitration agreement in the Guaranty, and delegated to the arbitrators: whether Abengoa properly joined the sureties to the arbitration pursuant to the Guaranty and the ICC Rules; whether the sureties' claim against PGE met the Guaranty's test of "aris[ing] out of or in connection with an agreement with a subcontractor or [the] Guaranty," and whether PGE had therefore agreed to arbitrate its disputes against the sureties. The panel concluded that the district court erred in enjoining the sureties from participating in the ICC arbitration, and preventing the arbitral tribunal from addressing the scope of the arbitration.

---

## COUNSEL

Eric D. Miller (argued), Perkins Coie LLP, Seattle, Washington; David Bledsoe, Perkins Coie LLP, Portland, Oregon; for Plaintiff-Appellee.

John Spencer Stewart (argued), Mario R. Nicholas, Thomas Ardell Larkin, and Jan D. Sokol, Stewart Sokol & Larkin LLC, Portland, Oregon, for Defendant-Appellants.

Nathan D. O'Malley (argued) and Sara H. Kornblatt, Gibbs Giden Locher Turner Senet & Wittbrodt LLP, Los Angeles, California, for Amicus Curiae Abengoa.

## ORDER

The opinion in this case, filed on July 10, 2017 and published at 862 F.3d 981, is amended as follows:

Page 986, footnote 3, second paragraph:

Replace "the Construction Contract's arbitrability clause" with "the Guaranty's arbitration clause".

With these changes, the panel has voted to deny the petition for panel rehearing. Judges Bybee and Hurwitz have voted to deny the petition for rehearing en banc and Judge Rakoff so recommends.

The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on it. Fed. R. App. P. 35(b).

The petition for panel rehearing and rehearing en banc, Dkt. 51, is **DENIED**. No further petitions for rehearing will be entertained.

**OPINION**

RAKOFF, Senior District Judge:

If two parties enter a contract that both requires arbitration of their disputes and allows impleader of a third party, must a party that did not initiate the impleader arbitrate a dispute that arises out of the same transaction at issue in the arbitration with the impleaded third party? We hold, on the facts of this case, that this question is really a question about the scope of the arbitration clause for the arbitrator to decide. Since, instead, the district court undertook to decide that question, we vacate and remand.

BACKGROUND

This appeal concerns the interplay of three related contracts. In the first (the "Construction Contract"), entered into in June 2013, appellee Portland General Electric Company ("PGE") hired several related contracting companies (collectively, the "Contractor") to build an Oregon power plant. The Construction Contract allows PGE to terminate the agreement upon the Contractor's default. A "Disputes" provision requires the parties to attempt to mediate any disputes, but if mediation fails, "each Party shall have the right to take whatever legal actions that they may choose." A "Choice of Law; Jurisdiction" provision states that the agreement is governed by Oregon substantive law and that the parties "consent to the exclusive jurisdiction of any U.S. federal court with jurisdiction over Oregon." The

contract passingly mentions arbitration twice, but does not require it.[1]

The Construction Contract requires the Contractor to obtain a performance bond. Appellants Liberty Mutual Insurance Company and Zurich American Insurance Company (collectively, the "Sureties") issued the required bond (the "Bond") to PGE. The Bond incorporates the Construction Contract by reference and states that "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located, and in any court(s) to which the Parties to the Construction Contract have agreed will have jurisdiction over disputes thereunder." The Bond is silent as to arbitration.

The Construction Contract also requires the Contractor to obtain a guaranty of performance from a parent company, Abengoa S.A. ("Abengoa"). Abengoa issued a guaranty to PGE (the "Guaranty"), in which both parties consented to submit any disputes "in connection with this Guaranty" to binding arbitration. Of particular relevance here, the Guaranty specifies that the arbitration is to be conducted by the International Chamber of Commerce ("ICC") under its procedural rules and Oregon substantive law, and that "[o]nce the arbitration proceeding is commenced hereunder, either

---

[1] A "Responsibilities of Contractor" provision gives PGE the right to audit the Contractor; PGE must "treat such audit data as confidential, but shall not be precluded from using such audit data in any legal proceedings (including without limitation mediation or arbitration) arising under this Agreement." A "Costs and Attorney Fees" provision states: "In any litigation arising out of this Agreement, including arbitration and any case or proceeding under the Bankruptcy Code or any successor statute, the prevailing Party shall be entitled to recover [reasonable expenses]."

Party may implead any other person or entity (with such person or entity's consent) in, and/or raise any claim against, any other person or entity provided such claim arises out of or in connection with an agreement with a Subcontractor or this Guaranty."

On December 18, 2015, PGE declared the Contractor in default and terminated the Construction Contract. Abengoa filed a Request for Arbitration with the ICC on December 31, 2015, naming PGE as "respondent" and the Contractor as an "impleaded" party. Abengoa contended that the Contractor had not defaulted, that PGE's termination of the Construction Contract was wrongful, and that Abengoa owed PGE nothing under the Guaranty. The Contractor sought similar relief.

On March 2, 2016, Abengoa filed a Request for Joinder in the arbitration, seeking to include the Sureties, who, under the Bond, would be liable to PGE if the Contractor had defaulted. Abengoa invoked both the impleader provision in the Guaranty and Article 7 of the ICC Rules.[2] Abengoa also sought a declaration that the Sureties owed PGE nothing under the Bond. The Sureties consented to the arbitration and

---

[2] Article 7, titled "Joinder of Additional Parties," states in relevant part:

> A party wishing to join an additional party to the arbitration shall submit its request for arbitration against the additional party (the "Request for Joinder") to the Secretariat. . . . Any such joinder shall be subject to the provisions of Articles 6(3)–6(7) [governing the interpretation of arbitration agreements] and 9 [governing claims arising out of more than one contract].

ICC Rules, Article 7(1).

sought similar relief. On March 9, 2016, the Sureties sent PGE a letter denying liability under the Bond.

Two weeks later, on March 23, 2016, PGE filed this diversity action in the District of Oregon against the Sureties, alleging breach of the Bond and bad faith. PGE sought a preliminary injunction prohibiting the Sureties from arbitrating their claims against PGE, claiming that Abengoa had improperly impleaded the Sureties. PGE also filed a Jurisdictional Objection before the ICC, arguing that "the entire arbitration is an improper and collusive effort orchestrated by Abengoa and its subsidiaries to drag into international arbitration claims that [PGE, the Sureties, and the Contractor] have agreed to litigate before the Oregon courts."

In the district court, the Sureties opposed the motion to enjoin arbitration, arguing, *inter alia*, that "[b]y virtue of PGE's selection of the ICC Rules, it has expressly agreed that the arbitrator shall decide questions of arbitrability," and that it is up to the ICC tribunal to decide whether Abengoa validly joined the Sureties and for what purposes. The Sureties then moved to stay the litigation pending the resolution of the ICC arbitration, invoking both the mandatory stay provision of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and the court's inherent authority to manage its docket.

The district court refused to stay the litigation and granted the preliminary injunction, finding that "the parties never agreed to arbitrate this dispute." The Sureties timely appealed. This Court granted a stay of the district court proceedings pending appeal.

DISCUSSION

PGE does not dispute the validity of the arbitration clause in the Guaranty, but rather only its scope—PGE claims that the impleader provision and its acceptance of the ICC procedural rules do not extend to the resolution of its dispute with the impleaded Sureties. We review *de novo* the district court's conclusion that it, rather than an arbitrator, should decide arbitrability. *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011).

Generally, "the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Certain issues, however, are presumptively reserved for the court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). These include "gateway" questions of arbitrability, such as "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Momot*, 652 F.3d at 987.

However, parties may delegate the adjudication of gateway issues to the arbitrator if they "clearly and unmistakably" agree to do so. *Howsam*, 537 U.S. at 83–84 (citation omitted). We have found such delegation when the parties have incorporated by reference the rules of the American Arbitration Association ("AAA"), which state in relevant part that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)

(alteration in original). Although we have not opined on whether the incorporation of the rules of the ICC into an arbitration agreement also constitutes clear and unmistakable evidence of a delegation of gateway issues to the arbitrator, two of our sister circuits have held that the answer is yes. *See Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 118 (2d Cir. 2003); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 473–74 (1st Cir. 1989).

Because of the similarity between the ICC Rules and those of the AAA, we now join those circuits. In relevant part, the ICC Rules provide:

> [I]f any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitral tribunal . . . .

ICC Rules, Article 6(3). This language makes clear that the arbitrators are vested with the authority to determine questions of arbitrability.

PGE nonetheless contends that the ICC Rules do not govern the present dispute because the Bond lacks an arbitration clause. Because PGE and the Sureties never expressly agreed between themselves to delegate issues of arbitrability to the tribunal, PGE argues, a court must decide

whether its dispute with the Sureties is subject to ICC arbitration.

We disagree. Whether Abengoa properly joined the Sureties to the arbitration pursuant to the Guaranty and the ICC Rules, whether the Sureties' claim against PGE meets the Guaranty's test of "aris[ing] out of or in connection with an agreement with a Subcontractor or [the] Guaranty,"[3] and

---

[3] A few circuits have held, or adopted variants of the rule, that "this delegation applies only to claims that are at least *arguably* covered by the agreement [to arbitrate]." *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 507, 511 (6th Cir. 2011); *see Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th Cir. 2014); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006). But this approach is not universally followed. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1292 (10th Cir. 2017); *see also id.* at 1290 (determining that "a majority of our sister circuits" reject any variant of the "arguably covered" approach). Moreover, one of our own opinions can be read to have rejected it, although it might have been in *dicta* by which we would not be bound. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1076 (9th Cir. 2013).

We need not take a side in this circuit split, or determine if we already have, because the Sureties' claim against PGE is, at least, "arguably covered" by the Guaranty's arbitration clause. *See Agere Sys., Inc. v. Samsung Elecs. Co.*, 560 F.3d 337, 340 (5th Cir. 2009) (declining to take a side for the same reason). The liability of both the Sureties and Abengoa to PGE turns on the same issue: whether the Contractor defaulted under the Construction Contract. In addition, the Sureties and Abengoa have signed an indemnification agreement between themselves. *Cf. Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (noting that nonsignatory to arbitration agreement may compel signatory to arbitrate if the dispute is "intertwined with the contract providing for arbitration" and there is a sufficiently close "relationship among the parties" (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359–61 (2d Cir. 2008))). It is at least arguable that the Sureties' claim against PGE "arises out of or in connection with an agreement with a Subcontractor or [the] Guaranty," and regardless of which side of the circuit split the Ninth

whether PGE has therefore agreed to arbitrate its dispute against the Sureties, are questions of the scope of the arbitration agreement in the Guaranty, delegated to the arbitrators.

The district court thus erred in enjoining the Sureties from participating in the ICC arbitration and denying at least a temporary stay of the litigation under the FAA, preventing the arbitral tribunal from addressing the scope of the arbitration. If the tribunal concludes that the arbitration agreement in the Guaranty extends to PGE's dispute with the Sureties, the litigation should be stayed under the FAA pending the outcome of the arbitration or dismissed. On the other hand, if the tribunal concludes that PGE is not required under the Guaranty to arbitrate its dispute with the Sureties, the district court can then consider whether the litigation should proceed or whether a discretionary stay is appropriate pending the outcome of the arbitration. *See Moses H. Cone*, 460 U.S. at 20 n.23.

## CONCLUSION

For the foregoing reasons, the judgment of the district court entering a preliminary injunction prohibiting the Sureties from pursuing claims against PGE in arbitration and denying a mandatory stay of the judicial proceedings under § 3 of the FAA is **VACATED** and the matter is **REMANDED** for further proceedings consistent with this opinion. The Sureties' appeal from the order denying their motion for a discretionary stay is **DISMISSED** for lack of appellate jurisdiction. *See Reid v. Doe Run Res. Corp.*,

Circuit falls, it is therefore up to the ICC to decide whether the Sureties' claim falls within the scope of the arbitration clause in the first instance.

701 F.3d 840, 844–45 (8th Cir. 2012); *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 87–88 (3d Cir. 2010). Each party shall bear its own costs on appeal.