Filed 10/21/25  Gonzalez v. Aten Technology CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JORGE GONZALEZ, Plaintiff and Respondent, v. ATEN TECHNOLOGY, INC., Defendant and Appellant. | G064777 (Super. Ct. No. 30-2023-01369268) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Craig L. Griffin, Judge. Affirmed.

Foundation Law Group and Eric S. Beane for Defendant and Appellant.

Grochow Law, Lauren E. Grochow, Daniel M. Kalinowski and Lauren Celine Torres for Plaintiff and Respondent.

Defendant Aten Technology, Inc. (Aten) appeals the trial court's order denying its motion to compel arbitration of plaintiff Jorge Gonzalez's complaint for retaliation and wrongful termination. The trial court denied the motion on the ground the parties' arbitration agreement was unconscionable. Among other things, the court found the parties' Dispute Resolution Agreement (Arbitration Agreement) lacked mutuality because a separate Employee Confidentiality and Proprietary Rights Agreement (Confidentiality Agreement) signed by the parties on the same day permitted Aten to sue plaintiff in court for any claims arising from the Confidentiality Agreement, while the Arbitration Agreement required all claims that would typically be brought by plaintiff against Aten to be arbitrated.

On appeal, Aten contends the trial court lacked authority to decide the enforceability of the Arbitration Agreement because the parties delegated that threshold issue to the arbitrator by providing any arbitration would be conducted pursuant to the JAMS Employment Arbitration Rules and Procedures (JAMS Rules) that were in effect when the claim was filed. The current version of the JAMS Rules provides that disputes over "the formation, existence, validity, interpretation or scope of the [arbitration] agreement . . . shall be submitted to and ruled on by the Arbitrator" and "the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." Aten also contends that, even if the court had authority to decide the issue of unconscionability, plaintiff should have been compelled to arbitrate.

We find no error and affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff began working for Aten as its operations manager on April 5, 2023. On March 21, 2023, Aten provided plaintiff a four-page written

2

offer of employment, which plaintiff signed on March 24 (Offer Letter). It contained a provision requiring arbitration of "any dispute or claim" arising out of the employment relationship "pursuant to the rules for arbitration of employment disputes by the American Arbitration Association provided you choose to do so, as Execution of the Arbitration Agreement is voluntary." Plaintiff initialed the statement, below the arbitration provision, that said "Employee Voluntarily Agrees to Arbitration outlined above." (Underscoring omitted.)

But then, on plaintiff's first day of employment, Aten presented plaintiff the Arbitration Agreement as part of multiple documents it gave plaintiff as part of his onboarding package. The Arbitration Agreement contained provisions that were, in many respects, different from the arbitration provision set forth in the Offer Letter. The documents in the onboarding package (including the Arbitration Agreement) were not provided to plaintiff in advance of his first day of work; they were not given to him to review as part of his Offer Letter. Also on his first day, Plaintiff was provided a Confidentiality Agreement governing, among other things, the handling of certain potential disputes between the parties. A human resources employee (a payroll specialist) presented plaintiff with the onboarding package containing both agreements and waited in the room with plaintiff while plaintiff signed them. The human resources employee then countersigned both agreements on behalf of Aten.

I.

THE ARBITRATION AGREEMENT

The Arbitration Agreement is a two-page, pre-printed, single-spaced document. It includes a blank line in the first paragraph where the plaintiff's name was handwritten in and signature blocks for Aten and

3

"Employee." It includes five separately numbered paragraphs, titled "1. Alternative Resolution," "2. Class Action," "3. Jury Trial," "4. Payment of Costs," and "5. Severability." (Boldface omitted.) The "Alternative Resolution" (boldface omitted) section states: "The Parties agree that any controversy arising out of or relating to [plaintiff's] employment with [Aten], whether brought by [plaintiff] or [Aten] . . . shall be submitted to arbitration in Orange County, California, before a sole arbitrator selected from JAMS, and shall be conducted in accordance with the provisions of California Code of Civil Procedure §§ 1280 et seq. and the JAMS Employment Arbitration Rules in effect at the time the claim is filed ('JAMS Rules')."

There is no evidence in the record plaintiff was provided a copy of the JAMS Rules when he was given the agreements to sign. Nor is there evidence he accessed and reviewed them on the JAMS website, or was given the opportunity and means to do so before he was asked to sign the onboarding documents on his first day of employment. The Arbitration Agreement simply stated, "[c]opies of the JAMS Rules and forms can be located at www.jamsadr.com, or by calling [telephone number]."

The JAMS Rules in effect at the time of plaintiff's employment and the commencement of his lawsuit comprise 34 rules, many of which contain multiple subparts. The JAMS Rules are 12 pages long, and each page has two columns of single-spaced text. Rule 1(b) states "[t]he Parties shall be deemed to have made these Rules a part of their Arbitration Agreement . . . whenever they have provided for Arbitration by JAMS under its Employment Rules . . . ." Rule 11(b) provides "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to

4

and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

The "Class Action" (boldface omitted) section of the Arbitration Agreement is a class action waiver, in which the parties agreed they could not assert a class action in any arbitration or any other forum. It further states: "I and the Company further expressly intend and agree that any claim that all or part of this class action waiver is unenforceable, unconscionable, void, or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator."

The next section of the Arbitration Agreement, titled "Jury Trial," states in boldface print: "Both [plaintiff] and [Aten] acknowledge and agree that both are hereby waiving any rights to trial by jury in any action, proceeding, or counterclaim brought by either [plaintiff] or [Aten] against the other in connection with any matter whatsoever arising out of or in any way connected with [plaintiff's] employment." (Boldface omitted.)

Finally, the "Severability" (boldface omitted) section provides: "If any portion of this Agreement is determined to be invalid, illegal, or unenforceable under any applicable law, the validity, legality, and enforcement of the remaining provisions shall not in any way be affected or impaired. If a provision of this Agreement is determined to be invalid, illegal, or unenforceable in any respect under any applicable law, such provision shall be renegotiated by the parties. The objective of the renegotiation shall

5

be to place each party in a position as nearly equal to that had such provision not been determined to be invalid, illegal, or unenforceable."

## II.

## THE CONFIDENTIALITY AGREEMENT

Plaintiff signed the Confidentiality Agreement as part of his onboarding package on April 5, 2023—the same day he signed the Arbitration Agreement. The Confidentiality Agreement is a seven-page, single-spaced agreement that, among other things, addresses how plaintiff must treat Aten's confidential information, inventions, and security. The Confidentiality Agreement provides that "[a]ny action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the state of California, county of Orange" and "[t]he Parties irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue."

The Confidentiality Agreement includes the following integration clause: "Entire Agreement. Unless specifically provided herein, this Agreement contains all of the understandings and representations between the Employee and ATEN pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter." (Boldface omitted.)

Finally, the Confidentiality Agreement contains a severability provision stating, "[s]hould any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken,

6

such holding shall not affect the validity of the remainder of this Agreement . . . ."

## III.

### PLAINTIFF'S COMPLAINT

Aten terminated plaintiff's employment in August 2023, approximately four months after his employment began. Plaintiff sued Aten and other defendants in Orange County Superior Court for retaliation, wrongful termination, and violation of Business and Professions Code section 17200, et seq.[1] The gravamen of plaintiff's complaint is that Aten fired him in retaliation for reporting illegal conduct by the company.

## IV.

### THE MOTION TO COMPEL ARBITRATION

Aten moved to compel arbitration of the action pursuant to the Arbitration Agreement. It contended all of plaintiff's claims were encompassed within the broad scope of the Arbitration Agreement and any dispute over arbitrability, including enforceability, had been delegated to the arbitrator because of the Arbitration Agreement's incorporation by reference of the JAMS Rules. Plaintiff opposed the motion, arguing Aten failed to show the parties had clearly and unmistakably agreed to delegate arbitrability to the arbitrator and the Arbitration Agreement is unenforceable due to

---

[1] Plaintiff later voluntarily dismissed all defendants other than Aten.

7

unconscionability. Plaintiff introduced a copy of the Confidentiality Agreement in opposition to the motion.

V.

### THE COURT'S RULING ON THE MOTION TO COMPEL ARBITRATION

The trial court denied Aten's motion. It found the parties had not delegated to the arbitrator the issue of the Arbitration Agreement's enforceability: "The Agreement here does not provide the 'clear and unmistakable evidence' required. It does not say anything at all about who shall determine arbitrability. It does not contain a specific delegation clause saying something along the lines of the arbitrator shall have the exclusive authority to resolve any dispute regarding the arbitrability of claims or defenses. [¶] Although there is no delegation language in the Arbitration Agreement, Aten argues that the incorporation of the JAMS rules into . . . it provides the required 'clear and unmistakable evidence.' On facts similar to this case, the court in *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, held that the provider rules did not show the required 'clear and unmistakable intent.' The Court finds *Ajamian* persuasive and reaches the same conclusion here."

The court then concluded the Arbitration Agreement was unconscionable—and therefore unenforceable—due to lack of mutuality: "Here, the Confidentiality Agreement contains a host of promises by the employee to the company to keep information confidential; but the company makes virtually no promises to the employee. Accordingly, the party most likely to bring an action under the Confidentiality Agreement would be the employer, which the employer may bring in court. But most other actions relating to the employment relationship—such as discrimination, harassment, and wrongful termination—would be brought by the employee,

8

who must arbitrate. [¶] Accordingly, the Court here concludes the Arbitration Agreement, considered with the Confidentiality Agreement, lack mutuality and are therefore substantively unconscionable. Because they are both procedurally and substantively unconscionable, they are unenforceable."

Aten timely appealed the denial of its motion.

## DISCUSSION

On appeal, Aten contends as follows: (1) The trial court should not have decided the threshold issue of unconscionability because the parties delegated that issue to the arbitrator by incorporating JAMS rule 11(b); (2) Even if the court could properly decide the issue, it erred in finding the Arbitration Agreement unconscionable; and (3) Even assuming the court correctly concluded the Arbitration Agreement is unconscionable, the unconscionable terms should have been severed. We reject each of Aten's contentions.

### I.

### THE TRIAL COURT PROPERLY RULED THE ARBITRATION AGREEMENT IS UNENFORCEABLE DUE TO LACK OF MUTUALITY

*A. Standard of Review*

"'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' [Citation.] Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's

9

meaning." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) "'We do not review the trial court's reasoning, but rather its ruling. A trial court's order is affirmed if correct on any theory, even if the trial court's reasoning was not correct.'" (*J.R. v. Electronic Arts Inc.* (2024) 98 Cal.App.5th 1107, 1114–1115.) The decision to sever rests in the trial court's discretion and is reviewed for abuse of discretion. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 121–127 (*Armendariz*), abrogated in part on another ground in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 340.)

*B. Interplay Between California Law and the Federal Arbitration Act (FAA)*

Aten contends the FAA applies to the Arbitration Agreement. We need not decide this issue because the outcome of the appeal would be the same under both California and federal law, both of which "favor[] enforcement of valid arbitration agreements." (*Armendariz, supra,* 24 Cal.4th at p. 97.) "As with the FAA (9 U.S.C. § 1 et seq.), California law establishes 'a presumption in favor of arbitrability.' [Citation.] An agreement to submit disputes to arbitration 'is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125.) "'"[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA' or California law." (*Ibid.*)

"'When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890.) Therefore, "our inquiry into the enforceability of the arbitration agreement at issue in this case entails the same inquiry under [California law] as the FAA: Are there

10

reasons, based on general contract law principles, for refusing to enforce the present arbitration agreement?" including "whether and to what extent the arbitration agreement was unconscionable." (*Armendariz, supra,* 24 Cal.4th at p. 99.)

## C. *The Parties Did Not Clearly and Unmistakably Agree to Delegate Arbitrability to the Arbitrator*

We begin with Aten's contention the parties agreed to arbitrate threshold issues, including the enforceability of the Arbitration Agreement. We disagree and conclude the trial court properly decided plaintiff's challenge to the enforceability of the Arbitration Agreement.

In all cases, there is an initial presumption that a court—not an arbitrator—has the authority to decide threshold issues of arbitrability, including any challenge to an arbitration agreement's enforceability. (*Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 654.) Indeed, "the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." (*Oracle America, Inc. v. Myriad Group A.G.* (9th Cir. 2013) 724 F.3d 1069, 1072.) The parties may agree to delegate authority to the arbitrator to decide threshold issues, but given the contrary presumption, evidence that the parties intended such a delegation must be "'clear and unmistakable'" before a court will enforce a delegation provision. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 781 (*Ajamian*); *Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) 586 U.S. 63, 69.) "This is a 'heightened standard,' higher than the evidentiary standard applicable to other matters of interpreting an arbitration agreement." (*Ajamian*, at p. 790.)

The "'clear and unmistakable'" test is justified because the question who will decide issues of arbitrability "is not one that the parties would likely focus upon in contracting, and the default expectancy is that the

11

court would decide the matter." (*Ajamian, supra,* 203 Cal.App.4th at p. 782.) Accordingly, an arbitration agreement's "silence or ambiguity about the arbitrator's power [to decide the question of arbitrability] cannot satisfy the clear and unmistakable evidence standard." (*Ibid*.)

Here, as in *Ajamian*, "[n]owhere in the [Arbitration] Agreement is there any express grant of authority to the arbitrator to decide threshold issues such as the unconscionability of the arbitration provision. The [Arbitration] Agreement does not state that the [arbitrator], rather than the court, will determine if the arbitration provision is unconscionable or otherwise unenforceable. Indeed, there is no language indicating that the parties ever contemplated who would decide such issues." (*Ajamian, supra,* 203 Cal.App.4th at p. 782.)

Aten does not contend otherwise. Rather, Aten argues the general incorporation of JAMS Rules—or, more accurately, the incorporation of whatever version of the JAMS Rules would be in effect when a claim is filed—meets the heightened standard of clear and unmistakable evidence the parties intended to delegate threshold issues to the arbitrator.[2] Aten relies on decisions from both federal and California courts holding that, at least in some contexts, the incorporation of arbitration rules constitutes clear and

---

[2] We assume for purposes of our analysis—and plaintiff does not dispute—the language in the Arbitration Agreement that the arbitration shall be "conducted in accordance with" JAMS Rules was sufficient to incorporate some version of the JAMS Rules by reference into the agreement.

unmistakable evidence of an agreement to delegate arbitrability decisions to the arbitrator.[3]

We share the concern expressed in *Ajamian* (and in decisions by other courts) whether simply incorporating a set of arbitration rules by reference in an employment contract can fairly be said to constitute "'clear and unmistakable'" evidence the parties knowingly manifested their intent about who will decide issues of enforceability, validity, and arbitrability.[4] We also share the concern expressed by other courts that doing so is particularly problematic in the employment context or when one of the parties to the arbitration agreement is unsophisticated. (See *Beco v. Fast Auto Loans, Inc, supra,* 86 Cal.App.5th at p. 306 [holding in the employment context, and under the facts there, incorporation by reference of arbitration rules does not meet the clear and unmistakable test because there was "no such evidence [the employee] had any idea what the AAA rules might have meant, much less that he focused on this issue or knowingly agreed to delegate such disputes to an arbitrator"; "Concluding that [the employee] actually considered and consciously agreed to delegate the issue of arbitrability would

---

[3] Among other things, Aten cites *Brennan v. Opus Bank* (9th Cir. 2015) 796 F.3d 1125 (incorporation of AAA rules into an employment agreement between a bank and an executive was a clear and unmistakable delegation to the arbitrator to decide whether the agreement was unconscionable), *PGE Co. v. Liberty Mut. Ins. Co.* (9th Cir. 2017) 862 F.3d 981, and *Oracle America, Inc. v. Myriad Group A.G., supra,* 724 F.3d 1069. We are not, of course, bound to follow decisions from lower federal courts. (*Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 610 (*Mondragon*).)

[4] See, e.g., *Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292, 306; *Eiess v. USAA Federal Sav. Bank* (N.D.Cal. 2019) 404 F.Supp.3d 1240, 1252–1254; *Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035; *Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186, 1201.

13

be a complete fiction"]; *Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 657 [questioning but not deciding whether incorporation of arbitration rules binds an unsophisticated party]; *Mondragon, supra,* 101 Cal.App.5th at p. 607, fn. 7 ["[I]t is hard to see how an unsophisticated party would understand the provision as a clear and unmistakable delegation of exclusive authority to the arbitrator to decide arbitrability issues"]; *Oracle America, Inc. v. Myriad Group A.G., supra,* 724 F.3d at p. 1075 [limiting decision to agreements between sophisticated parties and declining to decide the effect of incorporating rules into consumer contracts]; *Gostev v. Skillz Platform, Inc.* supra, 88 Cal.App.5th at p. 1052 [reference to AAA rules insufficient to prove the consumer, an unsophisticated party, considered and consciously agreed to delegate the issue]; cf *Dream Theater, Inc. v. Dream Theater, supra,* 124 Cal.App.4th at p. 557 [holding incorporation of rules is clear and unmistakable evidence of parties' intent to delegate where agreement was between sophisticated parties of relatively equal bargaining power].) As one federal district court observed: "Although incorporation [of AAA's arbitration rules] by reference may fairly be deemed a clear and unmistakable delegation where there are sophisticated parties, a different result may obtain where one party is unsophisticated. For an unsophisticated plaintiff to discover she had agreed to delegate gateway questions of arbitrability, she would need to locate the arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the importance of a specific rule granting the arbitrator jurisdiction over questions of validity—a question the Supreme

14

Court itself has deemed "'rather arcane.'"" (*Eiess v. USAA Federal Sav. Bank, supra,* 404 F.Supp.3d at p. 1253.)

We need not reach either of those broader issues, however, because there are a number of other, independent, reasons for concluding the *particular* reference to arbitration rules Aten included in the Arbitration Agreement does not satisfy the heightened "clear and unmistakable" test.

First, Aten's argument turns on what rule 11(b) of the JAMS Rules currently provides. But the Arbitration Agreement did not incorporate by reference the JAMS rules as they currently exist—or even in the form in which they existed on the date the parties signed the Arbitration Agreement. It provided that, if a dispute should arise between the parties at some point in the future, the dispute would be resolved in an arbitration that would be conducted under whatever JAMS Employment Arbitration Rules were "*in effect at the time the claim* [*was*] *filed.*" (Italics added.) Thus, at the time plaintiff was asked to sign the Arbitration Agreement, neither he nor Aten had any way of knowing what the rules might say in the future and, therefore, no way of knowing what specific rules would actually govern any future dispute. We cannot find that referencing or incorporating some future, unknown version of the JAMS rules constitutes a "clear and unmistakable" manifestation of intent to delegate arbitrability issues solely and conclusively to the arbitrator.

Second, even if we were to ignore the contractual provision incorporating an unknown future set of rules and focus only on the JAMS rules as they currently exist (and as they existed when plaintiff signed the Arbitration Agreement), there is still no "clear and unmistakable"

15

manifestation that the parties intended the arbitrator to be the exclusive decision-maker on issues of arbitrability and enforceability.

In its current form, rule 11(b) of the JAMS Rules does not give the arbitrator the *exclusive* authority to decide whether the Arbitration Agreement is enforceable.[5] Nor does it provide that the arbitrator's decision on threshold issues (such as enforceability) is *final*. The Agreement states only that an "award or relief granted by the Arbitrator" is final and binding and "may be enforced by any court of competent jurisdiction." Particularly in light of the presumption in favor of judicial determination of threshold issues, we cannot say that, even if the parties had specifically incorporated this particular version of the JAMS Rules, they manifested a clear and unmistakable intent that the arbitrator—and *only* the arbitrator—would conclusively decide threshold issues of arbitrability and enforceability.[6]

Third, even assuming for the sake of argument that simply stating the arbitration will be conducted under some future version of the

---

[5] Rule 11(b) provides "disputes over the formation, existence, validity, interpretation or scope of the agreement . . . shall be submitted to and ruled on by the Arbitrator" and "the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

[6] We recognize some California courts have found incorporation of arbitration rules to constitute a clear and unmistakable manifestation of intent. (See, e.g., *Rodriguez v. American Technologies, Inc., supra,* 136 Cal.App.4th at p. 1123 [AAA construction arbitration rules specified arbitrator decided arbitrability]; *Dream Theater, Inc. v. Dream Theater, supra,* 124 Cal.App.4th at p. 557 [AAA commercial arbitration rules specified arbitrator decided arbitrability]; *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1442–1443 [JAMS rule 11 authorized arbitrator to make the final decision as to what issues were arbitrable].) Given the particular facts here, including the specific terms of this particular Arbitration Agreement, we do not find those decisions dispositive.

JAMS Rules constitutes clear and unmistakable evidence the parties intended and agreed to delegate the issue of enforceability exclusively to the arbitrator, there is another reason there is no "clear and unmistakable" delegation here. At the same time plaintiff signed the Arbitration Agreement, he was asked to (and did) sign the Confidentiality Agreement, which also governed the subject of potential claims that may arise from the parties' employment relationship. This was after plaintiff had been given (and had initialed) the Offer Letter, which included yet another arbitration provision, which provided "any dispute or claim relating to or arising out of our employment relationship" would be resolved by binding arbitration "conducted . . . pursuant to the rules of arbitration of employment disputes by the American Arbitration Association . . . ."

In considering the Arbitration Agreement, we must consider and read it *together* with the documents plaintiff executed as part of his hire, including the Confidentiality Agreement and the Offer Letter. (Civ. Code § 1642 ["[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together"]; *Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 490 [holding an arbitration agreement and confidentiality agreement executed on the same day as part of plaintiff's hire, both of which governed how to resolve disputes arising from the plaintiff's employment, "should be read together"].)

Taken together, the three agreements are hardly a model of clarity, much less "clear and unmistakable" evidence as to who the parties intended would decide threshold challenges to the Arbitration Agreement, and even what arbitration rules would apply. On his first day on the job, plaintiff was given two agreements to sign (along with multiple other documents) as part of his onboarding package. This was after he had already

17

been given, and was asked to sign, a letter offering him the job and spelling out the terms of his employment. He literally was given (and dutifully signed) three different agreements governing the resolution of disputes between the parties.

The first agreement (the Offer Letter) said "any dispute or claim" relating to his employment would be resolved by arbitration conducted under the rules of the American Arbitration Association.

The second agreement (the Arbitration Agreement) said "any controversy arising out of or relating to Employee's employment with the Company, whether brought by the Employee or the Company" would be resolved in arbitration under whatever JAMS Rules would be in effect at the time the claim was filed and that any "class action, collective action, representative action, multiple plaintiff, or any similar procedures . . . shall not be asserted, nor will they apply, in any arbitration pursuant to this Agreement." (In neither instance were the rules provided, described, or explained to plaintiff.) The Arbitration Agreement did not include an integration clause and said nothing about how it related to the conflicting arbitration terms in the Offer Letter.

The third agreement (the Confidentiality Agreement) provided that "[a]ny action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the state of California, county of Orange." The Confidentiality Agreement, which called for a court to resolve disputes, also said it "contains all the understandings and representations between the Employee and ATEN pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter." And the severability clause in

18

that agreement says a court will decide whether any provision in it is unenforceable.

Viewed together, it is clear Aten's goal was to impose on plaintiff the obligation to arbitrate all claims he may have against the company and waive all class claims and, at the same time, allow Aten to sue plaintiff in court for claims it may bring against plaintiff for violating the terms of the Confidentiality Agreement. Nothing in these three documents "clearly and unmistakably" establishes the parties intended the arbitrator to have exclusive and final authority to decide the threshold issue of enforceability. (*Mondragon, supra,* 101 Cal.App.5th a p. 608 ["""As a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that [a] *court* might also find provisions in the contract unenforceable, there is no clear and unmistakable delegation of authority to the arbitrator"""].)

To someone with legal training and experience, perhaps the interpretation Aten now offers of the interplay of the terms of the agreements might be reasonable. Which is to say, perhaps someone with legal knowledge would be able to analyze the three documents and manage to discern the scope and import of the various arbitration, court resolution, integration, and severability provisions in them and also discern the court's authority would be limited to deciding whether the class action waiver is enforceable and deciding disputes over the Confidentiality Agreement. Perhaps they might even be able to determine, to the extent claims were to be arbitrated, whether some version of the JAMS Rules or the American Arbitration Rules would govern. But as the court in *Mondragon* explained, the question is not whether Aten's interpretation is reasonable: "The question is whether the delegation

19

is clear and unmistakable. [Citations.] *And it isn't."* (*Mondragon, supra,* 101 Cal.App.5th at p. 610, italics added.)

We reach the same conclusion here. As the party that drafted these employment-related agreements, Aten was in the position to ensure the agreements it provided to plaintiff included *clear* and *unmistakable* language specifying that any disagreement over the validity or enforceability of the arbitration provisions would be decided *exclusively* and *finally* by an arbitrator, not by a court. It would not be difficult to write such a provision. But Aten did not do so.

We conclude the Arbitration Agreement does not furnish clear and unmistakable proof the parties agreed to delegate exclusively to the arbitrator the determination of the enforceability of the Arbitration Agreement. The trial court did not err in so finding.

D. *The Arbitration Agreement Is Materially One-Sided and Therefore Unconscionable*

Turning to whether the trial court erred in finding the Arbitration Agreement unconscionable, we conclude it did not.

"The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. [Citation.] Under this standard, the unconscionability doctrine "'has both a procedural and a substantive element.'" [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of

20

whether they are overly harsh or one-sided.'" (*OTO, L.L.C. v. Kho, supra,* 8 Cal.5th at p. 125.)

Although both procedural and substantive unconscionability are required to deny enforcement of a contract as unconscionable, "they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114.) We discuss each in turn.

1. Procedural Unconscionability

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.] An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' [Citations.] Arbitration contracts imposed as a condition of employment are typically adhesive [citations] . . . ." (*OTO, L.L.C. v. Kho, supra*, 8 Cal.5th at p. 126.)

Once a contract is found to be adhesive, "[t]he pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required. [Citations.] ""Oppression occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form."""" (*OTO, L.L.C. v. Kho, supra*, 8 Cal.5th at p. 126.)

"[E]conomic pressure can also be substantial when employees are required to accept an arbitration agreement in order to *keep* their job. Employees who have worked in a job for a substantial length of time have likely come to rely on the benefits of employment. For many, the sudden loss of a job may create major disruptions, including abrupt income reduction and

21

an unplanned reentry into the job market. In both the prehiring and posthiring settings, courts must be 'particularly attuned' to the danger of oppression and overreaching." (*OTO, L.L.C. v. Kho, supra*, 8 Cal.5th at p. 127.)

We agree with the trial court's conclusion the Arbitration Agreement possessed only a modest amount of procedural unconscionability based on its adhesive nature and, therefore, a high degree of substantive unconscionability must exist to find the Arbitration Agreement unenforceable based on principles of unconscionability. There can be no reasonable dispute the Arbitration Agreement is a contract of adhesion. Aten presented the form agreement to plaintiff on his first day of employment as part of its onboarding package, and Aten clearly possessed superior bargaining power.

Aten contends the Offer Letter defeats plaintiff's argument of surprise because plaintiff had already agreed to arbitration before he showed up for work on the first day and was asked to (and did) sign the Arbitration Agreement. We find the argument unavailing. The agreements he was given to sign on his first day were markedly different from the arbitration terms set forth in the Offer Letter. The Offer Letter stated all disputes arising from his employment would be resolved by arbitration; as it turned out, however, based on the two agreements he was given on day one, only those claims plaintiff would be likely file against Aten would be arbitrated, while claims most likely to be asserted by Aten (i.e., for breach of the Confidentiality Agreement) could only be litigated in court. Plaintiff was not given a copy of the Arbitration Agreement and Confidentiality Agreement to review in advance of his start date, but was handed both agreements, along with a stack of other documents (all drafted by Aten), and expected to sign them while a human resources representative waited in the room with him. On

22

these facts, as plaintiff points out, the agreements presented to him on his first day of work, including the Arbitration Agreement, were not in any meaningful sense "voluntary," as stated in the Offer Letter.

We find no error in the trial court's conclusion that some measure of procedural unconscionability was shown.

2. Substantive Unconscionability

While procedural unconscionability focuses on how the agreement was obtained and executed, "[s]ubstantive unconscionability examines the fairness of a contract's terms. This analysis 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ""overly harsh""" [citation], "'unduly oppressive'" [citation], "'so one-sided as to "shock the conscience""" [citation], or "unfairly one-sided" [citation]. All of these formulations point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party.""" (*OTO, L.L.C. v. Kho, supra*, 8 Cal.5th at pp. 129–130.)

We have no difficulty concluding plaintiff's obligation to arbitrate his claims is unfairly one-sided and the Arbitration Agreement therefore has a high degree of substantive unconscionability. Aten based its motion to compel arbitration on the Arbitration Agreement, which was only one of multiple documents presented to plaintiff for his signature on his first day of employment. But on his first day, plaintiff and Aten also signed the Confidentiality Agreement, which also governed the subject matter of

potential claims that may arise between the parties as a result of the employment relationship.

As discussed above, the Arbitration Agreement and Confidentiality Agreement must be read together. (Civ. Code, § 1642 ["[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together"]; *Alberto v. Cambrian Homecare, supra,* 91 Cal.App.5th at p. 491.) When we do that, it is clear the Arbitration Agreement lacks mutuality. The Confidentiality Agreement is heavily (if not entirely) one-sided in favor of Aten.[7] It imposes obligations only on plaintiff and allows Aten to sue plaintiff in court for breach of those obligations. The Arbitration Agreement, however, governs all other claims arising from the employment relationship—*including all the claims that typically would be brought by an employee such as plaintiff*—and it requires those claims to be brought in arbitration. As noted by the trial court, "[a]n agreement may be unfairly one-sided if it compels arbitration of the claims more likely to be brought by the weaker

[7] Among other things, the Confidentiality Agreement required plaintiff to agree to treat all of Aten's business information as confidential, not to disclose such information to others, and not to access, use, copy, or remove such information. At oral argument, Aten's counsel suggested the seven-page document was not truly one-sided because in a single sentence it acknowledges that any idea or invention will not be considered an "Employer Invention" if it "qualifies fully under the provisions of California Labor Code Section 2870 . . . including any idea or invention which is developed entirely on the Employee's own time without using the Employer's equipment, supplies, facilities or trade secret information, and which is not related to the Employer's business (either actual or demonstrably anticipated), and which does not result from work performed for the Employer." This sentence does not impose any obligations on Aten, and it certainly does not obviate the otherwise completely one-sided character of the Confidentiality Agreement and its judicial resolution provisions.

party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party." (*Fitz v. NCR Corp*. (2004) 118 Cal.App.4th 702, 724.) That is precisely the case here. The trial court correctly found the Arbitration Agreement is unenforceable.

*E. The Arbitration Agreement Cannot be Saved by Severance*

Aten contends that rather than denying arbitration, the trial court was required by the severability provision in the Arbitration Agreement to simply sever the unconscionable provisions and allow arbitration to proceed on the rest.[8] We disagree. The so-called "Severability" (boldface omitted) provision in the Arbitration Agreement provides, "[i]f any portion of this Agreement is determined to be . . . unenforceable . . . the remaining provisions shall not in any way be affected or impaired. If a provision of this Agreement is determined to be . . . unenforceable in any respect . . . such provision shall be renegotiated by the parties."

---

[8] Aten argues that, contrary to plaintiff's assumption, it does not contend the trial court abused its discretion by not severing the offending provisions *pursuant to Civil Code section 1670.5, subdivision (a)*, which provides if a court finds a contract or term thereof unconscionable "the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (*Ibid*.) Rather, Aten argues the court was required to sever *pursuant to the severability provision contained in the Arbitration Agreement*. Aten argues the standard of review is, therefore, de novo on that issue because the trial court lacked discretion in enforcing the parties' severability clause. As discussed below, we conclude severability is not a remedy here as a matter of law because the purported "severability" provision simply requires a renegotiation (and resulting attempt to agree upon a modification) of the agreement, and there is no particular provision or provisions to sever given that the lack of mutuality goes to the entire scope of arbitration.

25

Here, the unconscionability arises from the lack of mutuality of plaintiff's agreement to arbitrate and is not tied to one discrete provision that can be easily excised from the agreement. The unconscionability here goes to the entirety of the scope of the arbitration. Indeed, even Aten fails to identify precisely what provision(s) can and should be severed, referring to unidentified provisions in the Confidentiality Agreement that could be severed, or "even the entire Confidentiality Agreement."

In short, the lack of mutuality permeates the parties' agreement. As explained by the California Supreme Court, "such permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement. Rather, the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms" and "[b]ecause a court is unable to cure this unconscionability through severance or restriction, and is not permitted to cure it through reformation and augmentation, it must void the entire agreement." (*Armendariz, supra,* 24 Cal.4th at pp. 124–125.)[9]

Further, despite its "Severability" (boldface omitted) title, the provision relied upon by Aten is no such thing. It does not provide for

---

[9] This case is distinguishable from the California case relied upon by Aten, *Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, because that case involved a specific provision in the arbitration agreement that the court concluded could be severed—a provision expressly exempting from arbitration "'any claim based on or related to the . . . Inventions & Confidentiality Agreement between you and [the company].'" (*Id.* at pp. 1270, 1274–1275.) It also involved Civil Code section 1670.5, subdivision (a), and did not involve a severability clause like the one here, which mandates a renegotiation of the terms deemed unenforceable. (*Farrar v. Direct Commerce, Inc.*, at p. 1273.)

severance of terms found to be invalid or unenforceable. To the contrary, it provides the invalid or unenforceable terms must be "renegotiated by the parties," with the added proviso that the "objective" of the renegotiation is to put the parties in a position as close as possible to the position they would have been in had the offending provision not been found to be unenforceable. Such a "renegotiation," if successful, would necessarily require the Arbitration Agreement to be modified or reformed. "[W]hether an employer is willing, now that the employment relationship has ended, to allow the arbitration provision to be mutually applicable, or to encompass the full range of remedies, does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy. Such a willingness 'can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.'" (*Armendariz, supra,* 24 Cal.4th at p. 125.)

## DISPOSITION

The order is affirmed. Respondent shall recover costs on appeal.

GOODING, J.

WE CONCUR:

MOORE, ACTING P. J.

SCOTT, J.

27